**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LATRICE NICOLE MULDREW,

            **Plaintiff,**              **CIVIL ACTION NO. 10-15126**

    **vs.**                   **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

            **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:**  This Court recommends that Defendant's Motion for Summary

Judgment (docket no. 11) be GRANTED, Plaintiff's Motion for Summary Judgment (docket no. 8)

be DENIED, and Plaintiff's complaint be dismissed.

**II.**     **PROCEDURAL BACKGROUND**

       Plaintiff protectively filed applications for a period of disability, disability insurance benefits,

and supplemental security income on March 7, 2006 alleging disability beginning November 20,

2005 at the age of twenty-seven.  (TR 94-99, 112).  The applications were denied and Plaintiff

appeared with counsel on September 23, 2008 for a *de novo* hearing before Administrative Law

Judge (ALJ) John L. Christensen, who determined that Plaintiff was not disabled in a decision dated

November 12, 2008.  (TR 30-37).  The Appeals Council declined to review the ALJ's decision and

Plaintiff commenced the instant action for judicial review.  (TR 1-3).  The parties filed Motions for

Summary Judgment and the issue for review is whether Defendant's denial of benefits was

supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was thirty years old at the time of the administrative hearing.  (TR 46).  She completed high school and obtained an associate's degree in physical therapy.  (TR 46).  Plaintiff previously worked as a physical therapy assistant at a nursing home, as a sales/stock clerk, and as a fast food worker.  (TR 47-48).  Plaintiff testified that she suffers from neck and back pain and leg spasms caused by scoliosis and a work-related injury.  (TR 49, 51).  She testified that she takes medication and lays in bed during the day to help cope with the pain and discomfort.  (TR 53).

Plaintiff lives in a second floor apartment with her husband and school-age child.  (TR 44). She has a drivers license and is able to drive, but claimed that pain prevented her from driving to the hearing.  (TR 45).  She testified that she takes three to four naps per day, each lasting approximately one hour, because she is not able to sleep at night.  (TR 51).  Plaintiff stated that she has memory problems caused by her medication and difficulty handling money.  (TR 50).  She testified that her husband does the grocery shopping and housework, but she will occasionally take her child to school.  (TR 50).  She stated that she can stand and walk approximately ten to fifteen minutes before she has to sit, she has difficulty climbing the ten steps to her second floor apartment, and back pain prevents her from bending at the waist.  (TR 52).  She stated that she has a limited range of motion in her left arm and is not able to use that arm to push, pull, or reach overhead.  (TR 52-53).

### B.   Medical Record

Plaintiff has a history of scoliosis of the lumbar spine diagnosed at or near the age of ten, with a spinal fusion and Harrington rod placement.  She stopped working in November 2005 when she reportedly sustained a work-related injury to her neck and back.  In February and March 2006

2

Plaintiff presented to McLaren Flushing Community Medical Center with complaints of left shoulder and back pain radiating to the hip, bilateral leg spasms, and urinary and fecal incontinence. (TR 167-73). The clinician observed that Plaintiff had limited range of motion of the lumbar spine. (TR 172). Examination revealed moderate to marked kyphotic deformity of the mid lumbosacral spine, mild levoconvex curvature to the mid/lower lumbosacral spine, mild to moderate compression of the thecal sac, and no acute fracture. (TR 175-76). An MRI showed straightening of the cervical spine with no evidence of disc herniation or central canal stenosis. (TR 180).

In March 2006 Dr. Nael M. Tarakji of the Flint Neurological Centre examined Plaintiff for back and shoulder pain and found that she had normal muscle strength of all muscle groups, a normal gait, and diminished sensation in the left lower extremity. (TR 177-79). Dr. Tarakji observed that Plaintiff's neurological examination revealed no objective findings and her EMG showed no evidence of radiculopathy. (TR 177). Dr. Tarakji opined that Plaintiff's pain was most likely musculoskeletal and could be related to degenerative changes aggravated by her work injury. He prescribed Neurontin, Zanaflex, Norflex, and Motrin and stated that Plaintiff could be released to work to perform her regular job with no new restrictions. (TR 178).

Dr. Bret Bielawski examined Plaintiff on May 27, 2006 for the state disability determination service (DDS). (TR 189-91). Dr. Bielawski noted that Plaintiff reported that she could stand and sit for five to ten minutes only, she could not walk much, and she felt better if she bent over as she walked. Physical examination revealed that Plaintiff could not walk on her heels or toes, she could not squat, and she needed assistance in climbing onto the examination table. Dr. Bielawski observed that Plaintiff's manual dexterity and grip strength were unimpaired. He noted that there was significant pain to light palpation but no lumbar lordosis. He also found that Plaintiff's dorsolumbar

3

spinal range of motion was severely diminished.  Dr. Bielawski opined that Plaintiff had low back pain secondary to scoliosis resulting in lumbar spinal stenosis, facet arthropathy, and spurring.  (TR 191).  He concluded that Plaintiff was in urgent need of a neurosurgical consult.

In November 2006 Plaintiff presented to McLaren Flushing Community Medical Center with complaints of hallucinations and paranoia.  (TR 208-09).  The clinician opined that Plaintiff had possible medication induced psychosis.  (TR 206, 208-09).  Plaintiff was diagnosed with major depressive disorder single episode moderate.  (TR 207).  She received psychiatric evaluation from Genesys Hillside Center for Behavioral Services from December 2006 through January 2007.  (TR 220-26).  In a Psychiatric Intake Assessment dated January 16, 2007, Dr. Jyothi Nutakki diagnosed Plaintiff with pain disorder associated with psychological factors and a general medical condition, psychotic disorder, rule out hallucinations secondary to pain medication, arthritis, severe chronic back pain, and irritable bowel syndrome.  Dr. Nutakki assigned Plaintiff a GAF of 55 to 60 and stated that he would start Plaintiff on the anti-psychotic medication Risperdal and attempt to wean her off Xanax and Elavil.  (TR 217-19).

In August 2008 Plaintiff's primary care physician, Dr. Rizk, completed a Mental and Physical Medical Assessment of Plaintiff.  (TR 215-16).  Among other things, Dr. Rizk opined that Plaintiff was markedly limited in her ability to deal with the public and withstand work-related stress, moderately limited in her ability to maintain concentration and attention, and mildly limited in her ability to remember and carry out simple and complex instructions.  (TR 215).  Dr. Rizk further opined that Plaintiff could lift and carry less than ten pounds, stand or walk less than two hours, and sit less than six hours.  He opined that Plaintiff's impairments would disrupt a regular work schedule with low physical demands forty hours out of one hundred and sixty hours a month.

(TR 216).

On January 23, 2007 Plaintiff underwent an MRI of the cervical spine which showed mild reversal of the cervical lordosis but no spinal stenosis or herniated disc.  (TR 213).  A January 24, 2007 MRI of the thoracic spine showed mild bulging of the D8-D9 vertebral disc without significant compression of the thecal sac and normal spinal cord signal.  (TR 212).

**C.    Vocational Expert**

The Vocational Expert (VE) completed a written Vocational Analysis classifying Plaintiff's past work as a physical therapy assistant as skilled and heavy and her past work as a sales/stock clerk and fast food worker as unskilled and medium.  (TR 166).  The ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience who had the residual functional capacity to perform sedentary work with a sit/stand option and the following limitations: (1) no use of either upper extremity, (2) no more than occasional non-repetitive reaching, handling, grasping, or fingering, (3) no more than occasional non-repetitive movement of the head and neck either up and down or side to side, and (3) limited to simple routine tasks in a low stress environment with minimal changes in the workplace setting.  (TR 56).

The VE testified that the hypothetical person could perform work as a surveillance system monitor, credit clerk, and general office clerk, comprising 2110 jobs in Michigan's lower peninsula. (TR 56).  The VE further testified that if the individual could not sustain sufficient concentration, persistence, or pace to perform even simple routine tasks for forty hours a week, the individual would not be able to perform any work.  (TR 57).

**IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since

5

November 20, 2005, and suffers from the severe impairments of lumbar scoliosis, status post surgery cervical spine, and depression, she does not have an impairment or combination of impairments that meets or equals a listed impairment. (TR 32-33). The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform the full range of sedentary work, but would require a job with a sit/stand option, with no use of either upper extremity for more than occasional non-repetitive reaching, handling, grasping, and fingering, with only occasional non-repetitive movement of the head and neck from side to side and up and down, and which is comprised of simple routine tasks in a low stress environment, meaning minimal changes in the workplace setting. (TR 33-35). The ALJ further concluded that Plaintiff could not perform her past relevant work, but could perform a significant number of jobs in the national economy. (TR 35-37). Consequently, the ALJ concluded that Plaintiff is not disabled under the Social Security Act.

## V.      LAW AND ANALYSIS

### A.      Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the

administrative record as a whole.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th

Cir. 1981).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed,

even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.

*Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

1.  she was not presently engaged in substantial gainful employment; and
2.  she suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.  she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing

her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age,

education and past work experience to determine if she could perform other work.  If she could not,

she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the

burden of proof only on "the fifth step, proving that there is work available in the economy that the

claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make

a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to

perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.

1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert

testimony in response to a hypothetical question if the question accurately portrays the plaintiff's

physical and mental impairments.  *Id.* (citations omitted).

**C.      Analysis**

*1.      The ALJ Accurately Assessed The Treating Physician's Opinion*

Plaintiff argues on appeal that the ALJ erred by failing to assign proper weight to the August 2008 medical opinion of Plaintiff's primary care physician, Dr. Rizk.  In the disputed medical assessment, Dr. Rizk checked boxes indicating among other things that Plaintiff's impairments would disrupt a regular work schedule with low physical demands forty hours out of one hundred and sixty hours a month.  (TR 216).  Dr. Rizk also checked boxes indicating that Plaintiff was markedly limited in her ability to deal with the public and withstand work-related stress, moderately limited in her ability to maintain concentration and attention for at least two hour increments, and mildly limited in her ability to handle funds and remember and carry out simple and complex instructions.  (TR 215).  He further indicated that Plaintiff was limited to lifting and carrying less than ten pounds, standing or walking less than two hours, and sitting less than six hours.  (TR 216).

In his written opinion the ALJ addressed Dr. Rizk's assessment but assigned it little weight, stating that "there are no other treatment notes in the evidence of record by Dr. Rizk or other medical evidence supporting the doctor's opinion with regard to the claimant's actual level of functioning." (TR 35).  Plaintiff maintains that the ALJ failed to properly evaluate the medical records of evidence and recognize that the record contains many treatment notes by Dr. Rizk.  The crux of Plaintiff's argument is that Dr. Rizk's August 2008 assessment was entitled to greater weight under the treating physician's rule.

It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other

substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating

physician's opinion is not given controlling weight, the ALJ must consider various factors before

determining how much weight to give to the opinion.  Factors that should be considered include the

length of the treatment relationship and the frequency of examination, the nature of the treatment

relationship, the supportability of the opinion, the consistency of the opinion with the record as a

whole, and the specialization of the treating source.   20  C.F.R.  §§  404.1527(d)(2)-(d)(6),

416.927(d)(2)-(d)(6).

The Commissioner requires its ALJs to " 'always give good reasons in [their] notice of

determination or decision for the weight [they] give [a] treating source's opinion.' " *Cole v. Astrue*,

661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)).  "Those good reasons must

be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight.' " *Id.* (citation omitted).  Except for some limited circumstances,

the district court must remand the matter if the ALJ failed to provide good reasons for the weight

given to a treating physician's opinion.  *Wilson v. Comm'r*, 378 F.3d 541, 547-48 (6th Cir. 2004).

The record shows that the ALJ was aware that Dr. Rizk was Plaintiff's primary care

physician and had treated Plaintiff since 2005.  Indeed, it was the ALJ himself that elicited that

testimony from Plaintiff at the hearing.  (TR 51).  Furthermore, the ALJ expressly considered Dr.

Rizk's August 2008 medical assessment in his written opinion and cited to the treating physician

rule, indicating that he was aware that Dr. Rizk was a treating physician.  The ALJ also indicated

that he carefully reviewed the entire record which included the medical opinions of Dr. Rizk.  Based

on the record there is no doubt that the ALJ knew that the August 2008 assessment came from a

treating physician and was entitled to significant deference if it was well-supported and not inconsistent with the other substantive evidence.

The ALJ considered the evidence of record and concluded that there was no medical evidence supporting Dr. Rizk's opinion with regard to Plaintiff's functional capabilities.  The ALJ observed that Plaintiff's neurological examination was unremarkable and her objective laboratory testing related to scoliosis and status post cervical spine surgery indicated mild findings.  The ALJ noted that Plaintiff did not require a cane to ambulate and there was no evidence that she was under medical orders to lie down and rest throughout the day.  The ALJ also observed that Plaintiff was not regularly treated for depression.  He further recognized that Plaintiff's GAF was indicative only of moderate symptoms.

In his August 2008 opinion Dr. Rizk simply checked boxes about Plaintiff's alleged impairments and failed to provide supporting explanations or objective medical evidence to support his conclusions.  The ALJ specifically discussed Dr. Rizk's opinion and concluded that it was entitled to little weight because it was not supported by the evidence of record.  The ALJ is under no obligation to accept a treating physician's conclusory medical opinion if it is inadequately explained and not supported by specific findings.  In the view of the undersigned the ALJ appropriately reviewed the evidence of record and gave sufficiently good reasons for discounting the opinion of Dr. Rizk.

*2.     The ALJ Formulated An Accurate Hypothetical And RFC*

Next, Plaintiff argues that the ALJ made a step three finding that Plaintiff suffers from moderate difficulties in concentration, persistence, or pace without including that limitation in his hypothetical question, and in doing so formulated a hypothetical that failed to sufficiently account

for all of Plaintiff's deficits.  Plaintiff contends that because the ALJ's hypothetical wrongly limited Plaintiff only to simple routine tasks in a low stress environment, meaning minimal changes in the workplace setting, the VE's testimony cannot serve as substantial evidence.

"An improper hypothetical question cannot serve as substantial evidence under § 405(g), and can result in a remand or reversal."  *Edwards v. Barnhart*, 383 F.Supp.2d 920, 931 (E.D. Mich. 2005) (citing *Whitmore v. Bowen*, 785 F.2d 262, 263-64 (8th Cir. 1986)).  It has been regularly litigated and concluded in this district that a reference in a hypothetical question only to simple routine tasks in a low stress environment may, in some instances, fail to fully capture a claimant's moderate deficiencies in concentration, persistence or pace.  *See e.g., Roberts v. Comm'r*, No. 10-14064, 2011 WL 4407221, at *8 (E.D. Mich. Aug. 8, 2011) (citing cases); *Mousseau v. Comm'r*, No. 10-14430, 2012 WL 271379, at *5 (E.D. Mich. Jan. 9, 2012) (citing cases).  Yet "there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of simple, routine and repetitive work, but excludes a moderate limitation in concentration."  *Roberts v. Comm'r*, No. 10-14064, 2011 WL 4407221, at *8 (E.D. Mich. Aug. 8, 2011).  Instead, the role of the court in this situation is to "look at the record as a whole and determine if substantial evidence supports the ALJ's decision."  *Id.  See also Bohn-Morton v. Comm'r*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005).

At step three of the five step sequential process the ALJ concluded that Plaintiff had moderate deficiencies in concentration, persistence, or pace and medication induced memory problems.  These deficiencies in concentration, persistence, or pace were not incorporated in the RFC beyond requiring a limitation to simple routine tasks in a low stress environment, meaning minimal changes in the workplace setting.  As for the hypothetical, the ALJ asked the VE whether

there were jobs available for an individual limited to such simple routine tasks.  The VE testified in the affirmative, listing jobs available in the economy for such an individual.  The ALJ then presented a follow-up hypothetical, asking the VE to consider a person with the same age, education, work experience, and restrictions as Plaintiff but with the added limitation that the individual could not sustain sufficient concentration, persistence, or pace to do even simple routine tasks on a regular continuing basis.  (TR 57).  The VE testified that the addition of this restriction would be work preclusive.

Plaintiff maintains that the ALJ failed to properly consider the evidence of record, and in particular her hearing testimony related to her memory problems, in formulating the hypothetical question.  Yet the ALJ specifically asked the VE to testify as to whether jobs were available for an individual who, because of pain, fatigue, depression, and the effects of medication, could not sustain sufficient concentration, persistence, or pace to perform simple routine tasks on a regular continuing basis.  The hypothetical did include a moderate limitation in concentration, persistence, or pace based on Plaintiff's stated limitations.

The evidence of record shows that Plaintiff testified that she has poor memory and difficulty handling money.  In contrast, the record contains evidence that Plaintiff and her roommate reported that she pays bills, counts change, handles savings accounts, and uses her checkbook.  (TR 127, 144). In addition, both Plaintiff and her roommate reported that she helps with her child's homework, prepares her child's meals, watches television for five to six hours a day, plays cards, talks on the phone daily with friends and family, and does not require reminders to go places.  (TR 128, 145). At the same time, Plaintiff and her roommate reported that Plaintiff follows spoken and written instructions very well.  (TR 129, 146).  In combination with this evidence, the record

contains an opinion from Dr. Bielawski showing that Plaintiff was alert, oriented, and her memory was intact. (TR 190). Similarly, Dr. Nutakki's Psychiatric Intake Assessment states that Plaintiff's attention was fair, her memory was fair, and her attention and concentration were within normal limits. (TR 218).

After considering the evidence of record, the ALJ formulated an RFC that limited Plaintiff to simple routine tasks in a low stress environment. The undersigned finds that the ALJ's hypothetical and RFC accurately characterized Plaintiff's limitations. The Court should find that the ALJ's decision to deny Plaintiff's claim for benefits is supported by substantial evidence. Accordingly, Defendant's Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment should be denied.

## REVIEW OF REPORT AND RECOMMENDATION:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not

later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: February 10, 2012                  s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE



## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 10, 2012                  s/ Lisa C. Bartlett
                                          Case Manager